# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| NOVUS FRANCHISING, INC., | Civil No. 07-1964 (JRT/FLN) |
| Plaintiff, | Civil No. 07-1965 (JRT/FLN) |
| v. | |
| RANDE OKSENDAHL<br>d/b/a Windshield Rescue, | |
| Defendant, | **MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION** |
| * * * * * * * * * * * * * * * * * * * * * * * * | |
| NOVUS FRANCHISING, INC., | |
| Plaintiff, | |
| v. | |
| NATHAN HEMPERLY and<br>COREY HEMPERLY<br>d/b/a Windshield Doctor, | |
| Defendants. | |

Michael R. Gray and Jason J. Stover, **GRAY PLANT, MOOTY, MOOTY & BENNETT, P.A.**, 500 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for plaintiff.

John D. Holland and W. Michael Garner, **DADY & GARNER, P.A.**, 5100 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402; Lee Radford, **MOFFATT THOMAS BARRETT ROCK & FIELDS, CHTD.**, 420 Memorial Drive, Idaho Falls, ID 8345-1505, for defendants.

Plaintiff Novus Franchising, Inc. ("Novus") filed motions for a preliminary injunction against two former Novus franchisees.[1] For the reasons discussed below, the Court grants in part and denies in part Novus's motions.

---

[1] Case number 07-1965 was reassigned to this Court as a related case pursuant to the Court's May 15, 2007 order.

## BACKGROUND

Novus is an auto glass repair franchisor based in Minnesota, with approximately 254 franchises across the United States. Defendants Rande Oksendahl ("Oksendahl") and Nathan and Corey Hemperly ("the Hemperlys") are former Novus franchisees operating glass repair and replacement businesses in Idaho. Under the terms of the Novus Franchise Agreement, Novus franchisees are granted a non-exclusive license to use Novus trademarks, copyrights, and commercial symbols, as well as Novus's proprietary glass repair products.

Defendant Oksendahl has been involved in the glass repair business since 1980. In 1986, Oksendahl entered into a 5-year Franchise Agreement with Novus, which gave Oksendahl the right to operate a Novus glass repair business within a limited number of counties in Idaho. Oksendahl renewed his Franchise Agreement with Novus in 1991, extending the agreement for an additional five years. In April 1996, Oksendahl again renewed his agreement with Novus, this time for a ten-year term. Oksendahl grew dissatisfied with Novus's business support and Novus products, however, and in April 2006 he allowed his Novus franchise to expire. Novus alleges that following the termination of the Franchise Agreement, Oksendahl continued to provide the same glass repair services that he had provided under the Franchise Agreement, in violation of a non-compete provision in the agreement.

The Hemperlys entered into a similar 10-year Franchise Agreement with Novus in April 1996. They also grew dissatisfied with Novus's business support and Novus products, and allowed their franchise to expire in April 2006. Novus alleges that the

Hemperlys continued to provide the same glass repair services that they had provided under the Franchise Agreement, in violation of the non-compete provision.

Article 20.3 of the Franchise Agreement contains a "Post-Term Covenant Not to Compete." The non-compete provision states that, for a two-year period following termination of the agreement, the franchisee will not

> own, operate, lease, franchise, conduct, [or] engage in . . . any or other related business that is in any way competitive with or similar to the NOVUS® Business, which is located within the [Area of Primary Responsibility].

The "NOVUS Business®" is defined as "the windshield repair business operated by the Franchisee in conformity with the Business System pursuant to this Agreement." (Franchise Agreement, Addendum 6.) The Franchise Agreement Addendum defines "Business System" as

> the distinctive auto glass repair business products and services associated with the trademarks, trade names, service marks, copyrights . . . licensed to Novus.

(Franchise Agreement, Addendum 2.)

Under the Franchise Agreement Addendum, the "Franchise" consists of

> one (1) vehicle meeting Novus' specifications and equipped to perform windshield repair and other automotive and glass related services on a mobile basis in the "Area of Primary Responsibility," as defined in Article 2.1. The term "Franchise" will specifically exclude windshield replacement or installation products or services.

(Franchise Agreement, Addendum 3.)

Novus alleges that Oksendahl and the Hemperlys have continued to provide glass repair services in violation of the two-year non-compete provision. Novus filed separate actions in April 2007 for breach of contract against the defendants in Hennepin County

district court. The defendants removed these actions to federal court. Novus now seeks a preliminary injunction enjoining Oksendahl and Hemperly from providing any glass repair services pursuant to Article 20.3 of the Franchise Agreement.[2]

## ANALYSIS

**I.   PRELIMINARY INJUNCTION**

Courts analyze four factors in determining whether a party is entitled to a preliminary injunction: 1) the probability that the movant will succeed on the merits; 2) the threat of irreparable harm; 3) the balance between the harm and the injury that granting the injunction will inflict on the parties; and 4) the public interest. *Dataphase Sys. Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Publ'g Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). The Court addresses each of the four *Dataphase* factors in turn.

**A.   Probability of Success on the Merits**

Novus argues that defendants have breached the Franchise Agreement by continuing to provide glass repair services in violation of the two-year non-compete provision. Novus contends that it is likely to succeed on its breach of contract claim

---

[2] During oral argument on Novus's motion, Novus moved to strike supplemental affidavits provided by defendants just prior to the hearing. Defendants submitted requests for leave to file a responsive brief in opposition to Novus's motion to strike. The Court grants defendants' requests [File No. 07-1964, Docket No. 24; File No. 07-1965, Docket No. 30]. While defendants' affidavits were not timely, the Court finds no compelling reason to strike the affidavits. Novus's motion to strike [File No. 07-1964, Docket No. 23; File No. 07-1965, Docket No. 29] is therefore denied.

against both defendants. Defendants respond that Novus's breach of contract claim is unlikely to succeed because the non-compete provision is unreasonable and therefore unenforceable.

Pursuant to Article 25.1 of the Franchise Agreement, the Court must apply Idaho law to determine the enforceability of the non-compete provision. (Franchise Agreement, Art. 25.1.) Under Idaho law, "[n]on-compete provisions must be reasonable, which is to say they must not be more restrictive than necessary to protect a legitimate business interest." *Intermountain Eye and Laser Ctrs., P.L.L.C. v. Miller*, 127 P.3d 121, 127 (Idaho 2005). In the context of franchise agreements, Idaho courts have found that a franchisor has a legitimate business interest in protecting the goodwill associated with its trademarks and used by the franchisee. *Shakey's Inc. v. Martin*, 430 P.2d 504, 509-10 (Idaho 1967). However, a non-compete provision must not be injurious to the public. *Intermountain Eye and Laser*, 127 P.3d at 127.

Novus points to three business interests to support the reasonableness of the non-compete provision. Novus first argues that it has a legitimate business interest in the goodwill that is created by defendants' use of the Novus trademarks and products. *See Shakey's*, 430 P.2d at 509-10. Novus next argues that it has a legitimate interest in protecting itself from unfair competition, and that allowing defendants to violate the non-compete provision would make it more difficult to secure a new franchise in the Area of Primary Responsibility. Finally, Novus contends that failure to enforce the non-compete provision would result in an unraveling of its franchise network and would thus diminish the value of the franchise. Defendants argue that they have not profited from the goodwill associated with the Novus MARK AND Novus products, noting that they do

- 5 -

not do business under the "Novus" name and generally have not held themselves out as Novus franchisees during the course of the Franchise Agreement. Defendants further argue that the Franchise Agreement applies only to mobile auto glass repairs, and that the non-compete provision therefore does not include glass repairs made at defendants' permanent store locations.[3]

The Court finds that plaintiffs have articulated legitimate business interests that are served by the non-compete provision. There is no dispute that Novus has a legitimate interest in protecting itself from unfair competition and in ensuring the financial well being of its franchise network. The Court further agrees that Novus has a legitimate business interest in protecting the goodwill that is associated with the Novus mark and Novus products. As such, a non-compete provision that extended to a franchisee's use of Novus marks or Novus products would likely be no more restrictive than necessary to protect the franchisor's business interest in the goodwill that arises exclusively from its marks and products. However, the non-compete provision at issue here restricts Novus franchisees from engaging in any "related business that is in any way competitive with or similar to the NOVUS Business," for a period of two years following termination of the Franchise Agreement. (Franchise Agreement, Art. 20.3.) The non-compete provision may therefore be read to extend to all business products and services that compete with the Novus business, even those products and services that do not involve Novus

---

[3] Defendants also argue that the non-compete provision is invalid. The Court is not persuaded by defendants' argument that, under *McCandless v. Carpenter*, 848 P.2d 444, 450-51 (Idaho Ct. App. 1993), a covenant not to compete is prohibited in the context of non-exclusive franchises. Rather, the court in *McCandless* refused to enforce a non-compete clause merely because there was no independent consideration for the clause. *Id.* Here, defendants have evinced no evidence suggesting that the non-compete clause lacks consideration.

trademarks or Novus products. Indeed, this is the construction urged by Novus in support of its motion for a preliminary injunction. The Court is not persuaded that the non-compete provision, so construed, is no more restrictive than necessary to protect Novus's legitimate business interest in the goodwill that is associated with the Novus name. *Cf. Intermountain Eye*, 127 P.3d at 130 (finding that "a prohibition on providing services other than those provided by [plaintiff] exceeds the scope of any legitimate business interest").

The Court disagrees, however, with defendants' argument that under the plain language of the Franchise Agreement the non-compete provision applies only to mobile glass repairs, and not glass repairs made from permanent store locations. Defendants point out that the Franchise Agreement is entitled "Mobile Unit Franchise Agreement," and note that the Agreement describes the franchise as "a distinctive business concept . . . for operating mobile glass repair." (Franchise Agreement, Recital A.) The Agreement further defines "Franchise" as consisting of "one vehicle meeting Novus' specifications and equipped to perform windshield repair." (Franchise Agreement, Art. 1.3.) The non-compete provision, however, prohibits competition with the Novus "Business System," which is defined as the "distinctive auto glass repair business products and services associated with the trademarks, trade names, service marks, copyrights . . . licensed to Novus." (Franchise Agreement, Addendum 2.) Moreover, defendants have operated their Novus franchises from permanent store locations for the duration of the franchise. Defendants' argument that the Franchise Agreement applies only to mobile repairs is belied by the history of performance by the parties. *See Pub. Serv. Co. v. Kempthorne*, 2006 WL 1459843, at *14 (D. Idaho May 25, 2006).

In sum, the Court finds that Novus has not shown conclusively that it is likely to succeed on its breach of contract claim. The non-compete provision may well be reasonable to the extent it applies only to a franchisee's use of Novus marks and products. However, the construction of the non-compete provision urged by Novus prohibits more than defendants' mere use of Novus marks and products. It is therefore unclear whether, under Idaho law, the non-compete provision is no more restrictive than necessary to protect Novus's interest in the goodwill that is associated with its marks and products.

### B.   Threat of Irreparable Harm

Novus must establish that "irreparable harm will result without injunctive relief and that such harm will not be compensable by money damages." *Northland Ins. Cos. v. Blaylock*, 115 F. Supp. 2d 1108, 1116 (D. Minn. 2000). Novus argues that defendants' alleged violation of the non-compete provision is causing irreparable harm to its goodwill.[4] *See Advantus Capital Mgmt., Inc. v. Aetna, Inc.*, 2006 WL 2916840, at *5 (D. Minn. Oct. 11, 2006) ("[T]he loss of goodwill toward a business is precisely the sort of irreparable harm that is properly prevented through a preliminary injunction."). Specifically, Novus argues that defendants' continued operation of glass repair services makes it more difficult for Novus to re-franchise the Area of Primary Responsibility,

---

[4] Novus also suggests that the breach of a restrictive covenant creates an inference of irreparable harm. *See Overholt Crop. Ins. Co. v. Bredeson*, 437 N.W.2d 698, 701 (Minn. Ct. App. 1989) ("Irreparable harm may be inferred from the breach of a restrictive covenant in an employment contract."). However, the Court finds no precedent requiring a presumption of irreparable harm for breach of a non-compete provision by a franchisee. Indeed, in the context of franchise agreements, this Court has declined to apply a presumption of irreparable harm arising from the breach of a restrictive covenant. *Grow Biz Int'l, Inc. v. MNO Inc.*, 2002 WL 113849, at *8 (D. Minn. Jan. 25, 2002).

which in turn causes Novus to lose valuable customer relationships. Novus argues that the value of these customer relationships is difficult to quantify and therefore requires injunctive relief.

The Court finds that Novus's claimed inability to re-franchise the Area of Primary Responsibility because of defendants' alleged breach of the non-compete provision is speculative. Once again, analysis of this *Dataphase* factor turns in part on the scope of the non-compete provision. To the extent glass repair customers seek out defendants' services and products based on the Novus name, defendants' continued use of those Novus marks and products in violation of the Franchise Agreement may indeed make it more difficult for Novus to secure a new franchise in that market. As such, the Court agrees that Novus may suffer irreparable harm as a result of defendants' continued use of Novus marks and products. Thus, with respect to Novus marks and products, the second *Dataphase* factor weighs slightly in favor of Novus.

However, it is less clear how Novus suffers irreparable harm when defendants provide glass repair services and products that have nothing to do with the Novus name. In that case, Novus's alleged difficulties in re-franchising the area would have no apparent connection to the goodwill associated with Novus products and services. Thus, while Novus might seek money damages for any resulting loss of customers under the non-compete provision, injunctive relief stemming from a loss of goodwill would not be appropriate.

For these reasons, the Court finds that Novus has shown irreparable harm only with respect to the goodwill that is associated with Novus marks and products. As such, the second *Dataphase* factor weighs slightly in favor of Novus.

## C.   Balance of Harms

The balance of harms factor requires the Court to consider the balance between the harm to the movant and the injury that an injunction would cause to other interested parties. *Pottgen v. Missouri State High Sch. Activities Ass'n*, 40 F.3d 926, 928 (8th Cir. 1994). Novus argues that the harm caused by defendants' violation of the non-compete provision exceeds the harm that an injunction would cause to the defendants, which would require only that defendants comply with the terms of the Franchise Agreement. Defendants contend that, as small business owners, an injunction that enjoins all glass repair activities would severely disrupt, and potentially destroy, their glass repair and replacement businesses.[5]

The Court finds that the harm to defendants from an injunction that enjoins all glass repair activity would likely exceed the harm to Novus in the absence of injunctive relief. In particular, Novus has not shown conclusively that defendants' continued operation of their glass repair businesses creates an insurmountable barrier to new Novus franchisees in the Areas of Primary Responsibility. On the other hand, the injury to defendants from a more limited injunction, enjoining defendants from using Novus marks and products in their glass repair businesses, is outweighed by the harm to Novus absent injunctive relief.

The Court therefore finds that the balance of harms factor weighs slightly in favor of granting the preliminary injunction with respect to defendants' use of Novus marks and products.

---

[5] The Court notes that defendants have not submitted evidence showing how much of defendants' business consists of glass repair and how much is glass replacement.

### D. Public Interest

Finally, defendants argue that an injunction that enjoins their glass repair activities is not in the public interest. However, courts have found that the public interest is served by upholding valid restrictive covenants. *See N.I.S. Corp. v. Swindle*, 724 F.2d 707, 710 (8th Cir. 1984); *Metro Networks Comm'ns Ltd. v. Zavodnick*, 2004 WL 73591, at *7 (D. Minn. Jan. 15, 2004). To the extent the non-compete provision presents a reasonable restriction on defendants' use of Novus marks and products, the Court finds that an injunction of such activity is in the public interest.[6]

In sum, the Court concludes that the four *Dataphase* factors weigh slightly in favor of granting Novus a limited preliminary injunction. As discussed above, however, the Court grants the motion only with respect to the Novus marks and Novus products used by defendants in connection with their glass repair businesses. Defendants are not enjoined from providing any other glass repair services or products that have no connection with Novus marks or products. The Court therefore denies Novus's motion for a preliminary injunction in all other respects.

## II. ATTORNEYS' FEES AND COSTS

Novus seeks an award of attorneys' fees and costs pursuant to the Franchise Agreement. Under Article 23.1 of the Franchise Agreement, a party against whom injunctive relief is granted "will indemnify the prevailing party for all costs that it

---

[6] The Court is not holding that the non-compete provision is invalid. Rather, the Court finds that, for purposes of this preliminary injunction motion, Novus has not shown a likelihood of success on its claim that defendants have breached the non-compete provision by continuing to provide glass repair services.

incurs," including attorneys' fees and other costs. (Franchise Agreement, Art. 23.1.) The Court looks once again to Idaho law to determine the enforceability of this contractual term. Under Idaho law, contract provisions for attorneys' fees are generally enforced so long as the fees are reasonable. *See Mountainview Landowners Coop. Ass'n, Inc. v. Cool*, 136 P.3d 332, 337-38 (Idaho 2006); *Opportunity, L.L.C. v. Ossewarde*, 38 P.3d 1258, 1266 (Idaho 2002).

Novus has provided no supporting documentation that would allow the Court to evaluate whether its requested attorneys' fees and costs are reasonable. Novus should therefore file with the Court a supplemental request for attorneys' fees and costs that provides more precise details of the fees and costs requested. Defendants may respond to Novus's supplemental request if they believe a response is necessary.

Novus also argues that the Franchise Agreement allows for injunctive relief without the posting of a security bond. However, Federal Rule of Civil Procedure 65(c) does not allow the parties to waive the bond-posting requirement. Fed. R. Civ. P. 65(c) ("No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant."). Novus's request for a waiver of the bond-posting requirement is therefore denied.

**ORDER**

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Novus's motions for preliminary injunction against defendants Oksendahl [File No. 07-1964, Docket No. 12] and Hemperly [File No. 07-1965, Docket No. 6], are **GRANTED in part** and **DENIED in part**, as follows:

1. Defendant Oksendahl is enjoined from using or displaying Novus trademarks, copyrights, products, tools, technology, or techniques in connection with glass repair and the glass repair business. This injunction shall be in effect for a two-year period from the date of this Order, or until further modified by order of this Court, in the Counties of Clark, Freemont, Jefferson, Madison, Teton, Butte, and Bonneville, in the State of Idaho.

2. Defendants Nathan and Corey Hemperly are enjoined from using or displaying Novus trademarks, copyrights, products, tools, technology, or techniques in connection with glass repair and the glass repair business. This injunction shall be in effect for a two-year period from the date of this Order, or until further modified by order of this Court, in the Counties of Power, Bannock, Caribou, Bear Lake, Franklin, Oneida, and Bingham, in the State of Idaho.

3. In accordance with Rule 65(c) of the Federal Rules of Civil Procedure, Novus shall post a bond with the Clerk in the amount of $5,000.00 for the payment of such costs and damages as may be incurred or suffered by Oksendahl in the event he is found to have been wrongfully enjoined or restrained. Novus shall further post a bond with the Clerk in the amount of $5,000.00 for the payment of such costs and damages as may be incurred or suffered by the Hemperlys in the event they are found to have been wrongfully enjoined or restrained.

4. Novus's motions are **DENIED** in all other respects.

5. This Order shall go into effect upon the posting of the bond, and shall remain in effect until further order of this Court dissolving this Preliminary Injunction.

**IT IS FURTHER HEREBY ORDERED** that:

6. Defendants' requests for leave to file a responsive brief in opposition to Novus' motions to strike [File No. 07-1964, Docket No. 14; File No. 07-1965, Docket No. 30] are **GRANTED**.

7. Plaintiff's oral motions to strike defendants' affidavits [File No. 07-1964, Docket No. 23; File No. 07-1965, Docket No. 29] are **DENIED**.

DATED:   July 17, 2007             s/ John R. Tunheim  
at Minneapolis, Minnesota.            JOHN R. TUNHEIM  
                                                     United States District Judge